IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PIERRE MONTANEZ, <br> No. M30561, <br>           Plaintiff, <br> vs. <br> KIM BUTLER, <br> LT. SCOTT,  and <br> LORI OAKLEY <br>           Defendants. | Case No. 14-cv-00754-MJR |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Plaintiff Pierre Montanez, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on the events surrounding a disciplinary conviction after a knife was found in Plaintiff's cell.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers

to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Motions to Amend

As a preliminary matter, Plaintiff's two motions to amend the complaint must be addressed.

First, Plaintiff moves to amend the signature/Rule 11 declaration in the complaint (Doc. 6). He has submitted a page to be substituted for page 3 of the complaint. This new page contains an additional statement regarding the truthfulness of the complaint, and it bears a more recent signature date (*see* Doc. 6, p. 3). The additional statement regarding the truthfulness is unnecessary, essentially repeating the Rule 11 declaration that is a part of both the original page and the proposed substitute page. Moreover, Local Rule 15.1 does not permit amendment by interlineation. Rather, an amended pleading must be self-contained, including all claims against all defendants and any exhibits the plaintiff wants considered as part of the pleading. The fact that the proposed substitute signature/declaration page bears a different date from the filing date of the complaint illustrates why the Court cannot merely substitute pages. Therefore, Plaintiff's motion (Doc. 6) will be denied.

Second, due to a snafu in the electronic filing of the complaint, Plaintiff moves to amend the complaint to include a 17-page group of exhibits (including a 3-page exhibit list). As already

discussed, the complaint cannot be amended in this fashion. Rather, a self-contained amended complaint needs to be filed.[1] For these reasons, Plaintiff's motion to amend (Doc. 7) will be denied.

The Court recognizes that the proper inclusion of the exhibits with the complaint could theoretically make or break the viability of the complaint. However, rather than wait to have Plaintiff refile what is clearly a deficient pleading, the Court will proceed to review the present complaint. Plaintiff will then be afforded an opportunity to amend the complaint to state a colorable constitutional claim.

## The Complaint

According to the complaint, on April 14, 2014, the cell Plaintiff Montanez inhabited with inmate Freeman was searched by the Tactical Team and a knife was found. Plaintiff and Freeman were questioned separately and, apparently, there was insufficient evidence to determine which inmate owned the knife. Warden Kim Butler told Plaintiff that if he would say the weapon was Freeman's, and that he had seen Freeman in actual possession of the knife, Plaintiff "would be excluded from the whole deal"—presumably meaning that Plaintiff would not face any punishment. Plaintiff refused to provide such a false statement.

Although there was no evidence linking Plaintiff to the knife, Plaintiff was issued a disciplinary report (the offense charged is unknown at this juncture). Lt. Scott, the Adjustment Committee chairperson, refused Plaintiff's request for an investigation and/or polygraph examination. Plaintiff was ultimately convicted of the disciplinary offense and punished with one year in segregation, demotion to C grade for one year, commissary restrictions for one year, and yard restrictions for three months (the Adjustment Committee report is unavailable at this time).

---

[1] Plaintiff should note that his exhibits do not match the descriptions offered in his exhibit list. Exhibits 1 and 2, the key disciplinary report and Adjustment Committee report, are not included in the original set fo exhibits, or the proposed substitute group of exhibits.

Plaintiff contends that the disciplinary ticket was issued in retaliation for Plaintiff not taking Warden Butler's offer and refusing to falsely implicate inmate Freeman. He also asserts that the failure to investigate and/or give him a polygraph test, and the disciplinary conviction itself are the product of retaliation against him for refusing to give false testimony against Freeman. Plaintiff further explains that had he testified one way or the other, he could have faced disciplinary or even criminal charges, so Butler's offer raises Fifth Amendment concerns regarding self-incrimination.

Plaintiff attempted to file numerous administrative grievances regarding these events, to no avail. His grievances went unanswered. The exhibits attached to the complaint include several letters addressed to Grievance Officer Lori Oakley inquiring about unanswered grievances. Plaintiff also complained to Terri Anderson of the Administrative Review Board (who is not a defendant), but nothing was done to ensure his grievances were addressed.

The complaint also contains allegations that Plaintiff has been denied the equal protection of the law based on his race. According to Plaintiff, he is African American and, in contrast, white inmates have "maximum protections" at Menard, such as polygraphs and investigations (*see* Doc. 1, pp. 10-11).

Plaintiff asserts that Warden Butler, Adjustment Committee chairperson Lt. Scott, and Grievance Officer Lori Oakley conspired against him.

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into four counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Warden Kim Butler, Lt. Scott and Grievance Officer Lori Oakley, individually and in conspiracy, retaliated against Plaintiff when he failed to testify falsely, in violation of the First Amendment;
>
> **Count 2:** Lt. Scott denied Plaintiff due process and the equal protection of the law when he failed to investigate or perform a polygraph exam, in violation of the Fourteenth Amendment;
>
> **Count 3:** Plaintiff's disciplinary conviction violated his Fourteenth Amendment rights to due process and the equal protection of the law; and
>
> **Count 4:** Grievance Officer Lori Oakley denied Plaintiff due process in violation of the Fourteenth Amendment when she failed to respond to his grievances.

Insofar as the complaint contains a few stray allegations regarding the conditions of Plaintiff's confinement in segregation, the Court perceives that those details are presented in order to establish a due process interest in remaining out of segregation at Menard. If Plaintiff intended for those allegations to support an Eighth Amendment claim, he should consider any such claim dismissed without prejudice. The conditions of confinement are not linked to any particular defendant. Similarly, the Court does not perceive that Plaintiff intended to assert a freestanding Fifth Amendment violation against Warden Butler.

## Discussion

### Personal Involvement and Conspiracy

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Merely naming a defendant in the caption is insufficient to state a claim. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). A review of the complaint reveals no actual allegations regarding Grievance Officer Lori Oakley. The complaint

presents an issue regarding unanswered grievances, but Oakley is not mentioned in the relevant narrative. Without more, the letters to Oakley are insufficient. Consequently, there are no claims specifically asserted against Oakley that would satisfy the *Twombly* pleading standard.

The complaint also contains an assertion that Oakley was part of a conspiracy to violate Plaintiff's constitutional rights. The allegations of conspiracy are conclusory and are insufficient under the *Twombly* pleading standard. "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dep't,* 636 F.3d 293, 304–05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (quoting *Hernandez v. Joliet Police Dep't,* 197 F.3d 256, 263 (7th Cir.1999)).

The complaint does not describe a meeting of the minds; rather, all Plaintiff offers is a general causal chain of events. For these reasons, all allegations regarding a conspiracy involving Defendants Butler, Scott and Oakley will be dismissed without prejudice. Furthermore, since the complaint fails to allege any personal involvement by Grievance Officer Lori Oakley, she will be dismissed as a defendant, without prejudice. Consequently, Count 4, alleging that Oakley denied Plaintiff due process fails, but Count 4 will also be briefly discussed below.

**Count 1**

Count 1 alleges that Warden Butler, Adjustment Committee chairperson Lt. Scott, and Grievance Officer Oakley, individually or in conspiracy, retaliated against Plaintiff when he failed to testify against his cellmate. As already discussed, the allegations of a conspiracy have

not been pleaded sufficiently, and there is insufficient alleged personal involvement by Grievance Officer Oakley. Therefore, the Court will focus only on Warden Butler and Lt. Scott.

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000). Although only notice pleading is required, it is helpful to understand that to prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012) (internal citations omitted).

Plaintiff alleges that after he refused to make a false statement incriminating his cellmate, he was given a false or unjustified disciplinary report, Lt. Scott refused to investigate and/or perform a polygraph examination, and Plaintiff was then found guilty of the offense by the Adjustment Committee—consequences that can be said to have a chilling effect. A government official may not retaliate against someone for giving truthful testimony without running afoul of the First Amendment. *See generally Chrzanowski v. Bianchi*, 725 F.3d 734, 742-43 (7th Cir. 2013). Nor may a government official retaliate against someone in an attempt to override the Fifth Amendment privilege against self-incrimination and to compel testimony (*Lefkowitz v. Cunningham,* 431 U.S. 801, 806 (1977))—even in a prison disciplinary proceeding (*Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976)).[2] Although a First Amendment retaliation claim may have been *generally* pleaded, Plaintiff is again tripped up regarding the personal involvement requirement and Count 1 must be dismissed.

---

[2] "[W]hatever other infirmities punishing a general refusal to appear and testify may or may not have, punishment alone does not necessarily violate the Fifth Amendment." *Riggins v. Walter*, 279 F.3d 422, 430 -31 (7th Cir. 1995).

Warden Butler may have told Plaintiff that if he would testify that his cellmate had actually possessed the knife nothing would happen to Plaintiff, but there are no allegations that Butler subsequently retaliated against Plaintiff. There are no allegations that Butler issued the disciplinary report, nor is it alleged that Butler had any involvement in the investigation process or disciplinary hearing. Furthermore, Butler cannot be held liable merely because she is the warden. The doctrine of *respondeat superior* is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). "[S]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Backes v. Village of Peoria Heights, Illinois*, 662 F.3d 866, 870 (7th Cir. 2011). There are no such allegations tying Butler to any of the consequences allegedly suffered by Plaintiff. Therefore, Warden Kim Butler will be dismissed from Count 1 and from this action, albeit without prejudice.

According to the complaint, Lt. Scott refused to investigate the charge against Plaintiff, or to perform a polygraph exam, which Plaintiff asserts was retaliation for Plaintiff refusing to testify falsely about his cellmate. Although a chronology of events is circumstantial evidence that can support a retaliation claim (*see generally Peele v. Burch*, 722 F.3d 956, 960 (7th Cir. 2013)), the complaint is devoid of any other allegations that would make the retaliation claim plausible, rather than merely possible, as required under the *Twombly* standard. As pleaded (and without the exhibits properly before the Court), this claim is simply too tenuous and will be dismissed without prejudice.

**Count 2**

Count 2 focuses on Lt. Scott's refusal to investigate the charge against Plaintiff and refusal to perform a polygraph examination, which Plaintiff contends violated his right to due process. Plaintiff further alleges that his right to the equal protection of the law has been violated because white inmates are afforded "maximum protections," including investigations and polygraphs, but he, an African American, was not afforded those same opportunities for a full and fair proceeding.

The Due Process Clause of the Fourteenth Amendment, by its very terms, applies only to deprivations of life, liberty and property. *See Marion v. Radtke*, 641 F.3d 874, 875 (7th Cir. 2011). Because Plaintiff's good-time credits were never revoked, he cannot claim a right to substantive due process under *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).[3] Instead, the procedural due process allegations must be analyzed under the approach of *Sandin v. Conner*, 515 U.S. 472 (1995). Under *Sandin*, a prisoner is entitled to procedural due process protections before segregation imposing "an atypical and significant hardship" (*Id.* at 486), which includes "conditions materially more onerous than 'the ordinary incidents of prison life.' " *Marion*, 641 F.3d at 875 (quoting *Sandin*, 515 U.S. at 484).

Assuming at this point that Fourteenth Amendment protections are triggered, due process only requires that the inmate receive "advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decisionmaker, and a written explanation, supported by at least 'some evidence' in the record, for any disciplinary action taken." *Langstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006) (citations omitted); *see also*

---

[3] An extreme "frame-up," where no subsequent procedural fairness could uncover the truth, can constitute a substantive due process violation triggering the due process protections under *Wolff*. *See Langerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006), but the complaint does not sufficiently plead such a situation.

*Wolff v. McDonnell,* 418 U.S. 539 (1974).  Even in a *criminal* prosecution, there is no affirmative duty on police to investigate.  *See generally Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012) (citing, *e.g., Town of Castle Rock v. Gonzales,* 545 U.S. 748 (2005)).  Similarly, although polygraph tests are admissible in disciplinary proceedings (see, e.g., *Lenea v. Lane,* 882 F.2d 1171 (7th Cir.1989)), *Wolff* does not require that an inmate charged with a disciplinary violation be given a polygraph test.  Therefore the due process aspect of Count 2 fails to state a colorable claim.

Relative to the equal protection allegations within Count 2, the Equal Protection Clause forbids a state to "deny to any person within its jurisdiction the equal protection of the laws." U.S.CONST.. amend. XIV, § 1.  As a general matter, a "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'" *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), cert. denied, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action.  A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences.  It implies that a decision[-]maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

Even if the Court were to generously construe the allegation that white inmates are afforded "maximum protections," there is nothing whatsoever to support the racial animus

allegation, so it is nothing more than a possible claim, not a plausible claim. Therefore, the equal protection aspect of Count 2 fails.

Out of an overabundance of caution and particularly because the exhibits to the complaint are not properly before the Court at this time (due first and foremost to a snafu beyond Plaintiff's control), dismissal of Count 2 shall be without prejudice. As a result of the dismissal of Count 2, Lt. Scott is also entitled to dismissal.

**Count 3**

Count 3 is premised upon Plaintiff's general allegation that his disciplinary conviction constitutes a denial of due process and the equal protection of the law. A detailed discussion of the underlying legal principles is unnecessary. Count 3 fails because the nature of the conviction is not even pleaded in the complaint; it is not clear which of the three named defendants is allegedly liable for the deprivations; and, without the missing exhibits or more specific allegations, the *Twombly* pleading standard is not satisfied. More to the point, there are no allegations that Defendants Butler, Scott and Oakley were involved in the decision to convict Plaintiff of the disciplinary charge. For these reasons, Count 3 will be dismissed without prejudice.

**Count 4**

Although the absence of allegations of personal involvement by Grievance Officer Oakley has already been discussed, the claim in Count 4 that she denied Plaintiff due process warrants additional discussion.

Plaintiff claims that Oakley denied him due process when she failed to respond to his grievances. The few exhibits that are attached to the complaint reflect that Plaintiff responded that the specified grievances had not been received.

The complaint does not allege that the unanswered grievances had been sent to Oakley in the first place. Furthermore, prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause of the Fourteenth Amendment; therefore, the alleged mishandling of grievances by persons who otherwise did not cause or participate in the underlying conduct does not violate the Fourteenth Amendment. *See Owens v. Hinsley*, 635 F.3d 950, 953 -54 (7th Cir. 2011) (citing George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)). Consequently, Count 4 will be dismissed without prejudice.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, Plaintiff's motion to amend the complaint (Docs. 6 and 7) are **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a writ of mandamus (Doc. 3), which was mistakenly filed in this federal district court, rather than in the state circuit court for St. Clair County (as captioned), is **STRICKEN** from the record.

**IT IS FURTHER ORDERED** that **COUNTS 1-4** and Defendants **KIM BUTLER**, **LT. SCOTT** and **LORI OAKLEY** are all **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff is **GRANTED** leave to file an amended complaint; on or before **August 15, 2014**, Plaintiff shall file an amended complaint stating all claims against all defendants and containing any exhibits Plaintiff wants considered as part of his pleading. Failure to file an amended complaint by the specified deadline will likely result in the dismissal of the complaint with prejudice and the assessment of a "strike" for purposes of 28 U.S.C. § 1915(g). *See also* Fed.R.Civ.P. 41(b).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: July 28, 2014**

                                          s/ *Michael J. Reagan*
                                          **MICHAEL J. REAGAN**
                                          **UNITED STATES DISTRICT JUDGE**