# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

PIERRE MONTANEZ,            )
No. M30561,                )
                              )
        Plaintiff,            )
                              )
        vs.                 )      Case No. 14-cv-00754-MJR
                              )
KIM BUTLER,               )
LT. SCOTT,  and           )
LORI OAKLEY             )
                              )
        Defendants.       )

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

Plaintiff Pierre Montanez, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on the events surrounding a disciplinary conviction after a knife was found in Plaintiff's cell.  The original complaint was dismissed without prejudice for failure to state a claim (Doc. 9).  Plaintiff's motion for reconsideration was denied (Doc. 20).  An amended complaint (Doc. 10) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) Screening.– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for Dismissal.– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility.  *Id*. at 557.    At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Miscellaneous Motions

As a preliminary matter, multiple motions filed by Plaintiff must be addressed. Plaintiff's motions all stem from a snafu in the electronic filing of the original complaint. Plaintiff appears to distrust the electronic filing system and/or the prison officials tasked with transmitting documents to the Clerk of Court.

Plaintiff's "Motion for Clarification and Courtesy Copy Amended Complaint and Attach # (1) Exhibits Part 1" (Doc. 11) essentially seeks a copy of the 96-page amended complaint (Doc. 10) in order to prove that all 96 pages were transmitted to the Court.   Plaintiff explains that he received a notice of electronic filing from the Clerk of Court indicating that the 96-page amended complaint was filed, but the prison officials who transmitted the document on Plaintiff's behalf only returned to him "Attachment 2," the 37-page affidavit of Geoffrey W. Freeman (*see* Doc. 10-2).  The notice of electronic filing serves as confirmation of what the Court received and, in this instance, there is no discrepancy.   Any questions regarding what happened with Plaintiff's documents at the prison must be addressed to prison officials.   If

Plaintiff would like a copy of the amended complaint, he may submit a request to the Clerk of Court, accompanied by the copying cost (50¢ per page).  For these reasons, Plaintiff's motion (Doc. 11) will be **DENIED**.

Plaintiff also seeks leave to file a supplement to Exhibit 23 (Doc. 10-2)—the typed affidavit of Geoffrey W. Freeman and supporting documentation.   Although amendment by interlineation is not permitted under Local Rule 15.1, in this instance, where an exhibit is being added and no claim is altered, the Court will make a rare exception in order to move this case along.   Plaintiff's motion (Doc. 12) will be **GRANTED**.   The Clerk of Court will file the supplemental exhibit that was submitted with this motion.   The supplemental exhibit will be considered to be a part of the amended complaint (Doc. 10).

Plaintiff's "Motion for Clarification…" (Doc. 13) merely reflects Plaintiff's confusion regarding the practice of filing a motion seeking leave to file a document (e.g., Doc. 12), but not filing the accompanying proposed document until the Court has authorized the filing.   More specifically, Plaintiff seeks clarification of what became of his supplement to Exhibit 23.   As just discussed, the supplement will be filed contemporaneously with this order.   Consequently, Plaintiff's motion (Doc. 13) will be **DENIED**.

Plaintiff's "Motion to Perfect Delivery of Documents by Means of Signature" (Doc. 14), is an expression of Plaintiff's distrust of the prison officials who electronically transmit documents to the Court on his behalf.   Plaintiff appears to be asking that prison officials be ordered to properly transmit documents to the Court.   Although there was a transmission snafu related to the original complaint, Plaintiff was not prejudiced, in that he was allowed to file an amended complaint (and the Court can now say that the additional materials clearly would not have saved the original complaint).   Because Plaintiff is *pro se*, and because the Court recognizes

that there are occasional glitches in the electronic transmission of documents (from prisons and law offices alike) the Court does not perceive any prejudice to Plaintiff, or any need for further action.   The Clerk of Court works closely with the prisons regarding the electronic filing of documents, and the system is continually being monitored and improved on both ends.  For these reasons, Plaintiff's motion (Doc. 14) will be **DENIED**.

Plaintiff's "Motion for Civil Docket Sheet" (Doc. 15) will also be **DENIED**.  Plaintiff indicates that he wants to ensure that he is notified of all activity in his case.   The Court's electronic filing system automatically sends a notice any time something occurs in the case.

Most recently, Plaintiff filed a motion requesting a copy of the docket sheet, and seeking the "substitution" of the undersigned district judge in order to expedite review of the amended complaint (Doc. 21).   If Plaintiff is dissatisfied with the notices of case activity ("NEF's") sent by the Clerk of Court, he may pay for a full copy of the docket sheet (which at present is 4 pages and would cost $2).  Insofar as Plaintiff seeks to have this case assigned to another district judge, he has not cited any bias; rather, he is merely impatient.  With the filing of this order, all pending motions will have been addressed, and the amended complaint will be served upon the defendants.  For these reasons, Plaintiff's motion (Doc. 21) will be **DENIED** in all respects.

### The Amended Complaint

According to the amended complaint, on April 14, 2014, the cell Plaintiff Montanez inhabited with inmate Freeman was searched by the Tactical Team and a knife was found. Plaintiff and Freeman were questioned separately and there was insufficient evidence to determine which inmate owned the knife.  Warden Kim Butler told Plaintiff that if he would say the weapon was Freeman's, and that he had seen Freeman in actual possession of the knife, Plaintiff "would be excluded from the whole deal"—presumably meaning that Plaintiff would

not face any punishment.   Warden Butler explained that if Plaintiff did not implicate his cellmate, the Adjustment Committee—at the Warden's direction—would find Plaintiff guilty of possessing the knife.  Plaintiff refused to provide a false statement.

Although there was no evidence linking Plaintiff or his cellmate to the knife, Plaintiff was issued a disciplinary report for possessing dangerous contraband (*see* Doc. 10-1, p. 3 (the disciplinary report was issued by a correctional officer who is not a defendant to this case).  Lt. Scott, the Adjustment Committee chairperson, refused Plaintiff's request for an investigation and polygraph examination.   Plaintiff was ultimately convicted of the disciplinary offense and punished with one year in segregation, demotion to C grade, commissary restrictions, yard restrictions, and other associated indignities, such as having to wear a striped uniform and red identification tag.   According to the amended complaint, Lt. Scott confirmed that he was acting on the direction of Warden Butler (*see* Doc. 10, p. 13).

Plaintiff contends that the disciplinary ticket was issued in retaliation for Plaintiff not taking Warden Butler's offer and refusing to falsely implicate inmate Freeman.  He also asserts that Butler and Scott's failure to investigate and give him a polygraph test, and the disciplinary conviction itself, are retaliation against him for refusing to give false testimony against Freeman. From Plaintiff's perspective, Warden Butler conspired with Lt. Scott to rig the disciplinary hearing and conviction.

Plaintiff, who describes himself as being African-American, further observes that white prisoners facing similarly serious charges are not denied investigations, polygraphs and fair hearings.  It appears that he compares himself to the other inmates in segregation when he was housed there, two of whom were white.

Plaintiff attempted to file numerous administrative grievances regarding these events, all to no avail. His grievances went unanswered—at times purportedly because Grievance Officer Lori Oakley claimed not to have received the grievances. Plaintiff also complained to Terri Anderson of the Administrative Review Board (who is not a defendant), but nothing was done to ensure his grievances were addressed. Plaintiff describes all of this as the "scent of obstruction" (*see* Doc. 1, p. 10). From Plaintiff's perspective, the failure of the grievance system deprived him of any administrative remedy for challenging his trumped-up disciplinary report and conviction. He also alleges that Oakley was attempting to foil Plaintiff's exhaustion of administrative remedies, as is required by 42 U.S.C. § 1997e(a) as a prerequisite to a lawsuit. He generally attributes Oakley's inaction to racial prejudice (*see* Doc. 10, p. 18).

The amended complaint, read liberally, asserts that Warden Butler, Adjustment Committee head Lt. Scott, and Grievance Officer Lori Oakley conspired to: (1) retaliate against Plaintiff for not testifying falsely against his cellmate; (2) deny Plaintiff due process; and (3) deny Plaintiff the equal protection of the laws, based on his race.

The Court finds it convenient to divide the *pro se* action into three counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1: Warden Kim Butler and Lt. Scott, individually and/or in conspiracy, retaliated against Plaintiff by way of a disciplinary report and conviction after Plaintiff failed to testify falsely, all in violation of the First Amendment;**

> **Count 2: Lt. Scott and Warden Kim Butler, individually and/or in conspiracy, denied Plaintiff substantive and procedural due process and the equal protection of the laws when Plaintiff was denied an investigation and polygraph exam, and when the Adjustment Committee reached a predetermined conclusion**

regarding Plaintiff's guilt, all in violation of the Fourteenth Amendment; and

Count 3:    When Plaintiff's grievances went unanswered or were denied, Grievance Officer Lori Oakley, individually and/or in conspiracy with Warden Kim Butler and Lt. Scott, retaliated against Plaintiff in violation of the First Amendment, and denied Plaintiff substantive and procedural due process, and the equal protection of the laws, in violation of the Fourteenth Amendment.

## Discussion

The original complaint failed principally because it did not sufficiently plead how each defendant violated Plaintiff's constitutional rights, or how they acted in conspiracy. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dep't,* 636 F.3d 293, 304–05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (quoting *Hernandez v. Joliet Police Dep't,* 197 F.3d 256, 263 (7th Cir.1999)). As the viability of each constitutional claim is assessed, these standards will control the review of each claim relative to each Defendant's potential liability.

## Count 1

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000). Although only notice

pleading is required, it is helpful to understand that to prevail on a First Amendment retaliation claim a plaintiff must show:  (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012) (internal citations omitted).

Plaintiff alleges that after he refused to make a false statement incriminating his cellmate, he was given a false or unjustified disciplinary report, Warden Butler and Lt. Scott refused to investigate and/or perform a polygraph examination, and Plaintiff was then found guilty of the offense by the Adjustment Committee, per Warden Butler—consequences that can be said to have a chilling effect.  A government official may not retaliate against someone for giving truthful testimony without running afoul of the First Amendment.  *See generally Chrzanowski v. Bianchi*, 725 F.3d 734, 742-43 (7th Cir. 2013).  Nor may a government official retaliate against someone in an attempt to override the Fifth Amendment privilege against self-incrimination and to compel testimony (*Lefkowitz v. Cunningham,* 431 U.S. 801, 806 (1977))—even in a prison disciplinary proceeding (*Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976))  Thus, Count 1 states a colorable claim against Butler and Scott—individually and as co-conspirators.  Count 1 shall proceed.

## **Count 2**

Count 2 is premised upon Warden Butler's initial threat that Plaintiff would be found guilty of possessing the knife, unless Plaintiff made a statement that the knife belonged to inmate Freeman—who Plaintiff theorizes Warden Butler wanted to frame.   After Plaintiff refused to make a false statement, Butler and Lt. Scott refused to investigate and perform a polygraph

examination, and Plaintiff was then found guilty of the offense by the Adjustment Committee chaired by Lt. Scott, just as Butler had promised would happen.   As a result, Plaintiff was punished in a variety of ways, including being placed in segregation for a year.

The Due Process Clause of the Fourteenth Amendment, by its very terms, applies only to deprivations of life, liberty and property.  *See Marion v. Radtke*, 641 F.3d 874, 875 (7th Cir. 2011).   Even though Plaintiff's good-time credits were not revoked (a liberty interest), an extreme "frame-up," where no subsequent procedural fairness could uncover the truth, can constitute a substantive due process violation triggering the due process protections prescribed in *Wolff v. McDonnell*, 418 U.S. 539 (1974).  *See Langerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006).  Furthermore, a prisoner is entitled to procedural due process protections before being placed in segregation for a period approaching or exceeding one year.  *See Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009).  Procedural due process requires that the inmate receive "advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decisionmaker, and a written explanation, supported by at least 'some evidence' in the record, for any disciplinary action taken."  *Langstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006) (citations omitted).  The allegations against Butler and Scott state colorable substantive and procedural due process claims.

Relative to the equal protection allegations within Count 2, the Equal Protection Clause forbids a state to "deny to any person within its jurisdiction the equal protection of the laws." U.S.Const. amend. XIV, § 1.  As a general matter, a "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'" *Meriwether v. Faulkner*, 821 F.2d

408, 415 n.7 (7th Cir.), cert. denied, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decision[-]maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)). Plaintiff's equal protection claim is certainly undermined by his assertion that he was given a disciplinary report and unfairly convicted in retaliation for his refusal to testify falsely against inmate Freeman. However, racial prejudice need not be the sole causation. *See Chavez v. Illinois State Police*, 251 F.3d 612, 645 (7th Cir. 2001). This claim rests on the thinnest of reeds—barely more than a conclusory assertion. It is alleged that Butler and Scott, essentially, control the entire disciplinary process, and that African-American inmates facing major disciplinary charges have been uniformly denied due process. Consequently, at this early juncture, the equal protection aspects of Count 2 will be permitted to proceed.

For the reasons stated, Count 2, in its entirety, shall proceed against Defendants Butler and Scott.

### Count 3

In Count 3 it is alleged that Grievance Officer Lori Oakley, alone or in conspiracy with Warden Butler and Lt. Scott, failed to answer or denied all of Plaintiff's grievances—grievances aimed at upsetting his unjust disciplinary conviction. Three intertwined constitutional claims are asserted. First, it is alleged that Oakley was retaliating against Plaintiff in violation of the First Amendment for Plaintiff refusing to testify falsely about inmate Freeman. Second, it is alleged

that Oakley denied Plaintiff substantive and procedural due process.   Third, a Fourteenth Amendment equal protection claim is asserted.   None of these claims are adequately pleaded.

As a preliminary matter, the amended complaint presents only an assertion that Oakley joined in a conspiracy with Butler and Scott (*see* Doc. 10. P. 18).   Unlike Counts 1 and 2, where it is alleged that Butler and Scott worked together to falsely convict Plaintiff, there is nothing linking Oakley to any such conspiratorial plot.   The mere fact that Oakley did not answer or denied all of Plaintiff's grievances, alone, does not evidence a meeting of the minds.   The conspiratorial claim within Count 3 will be dismissed without prejudice.

Regarding the due process claim, the mishandling of grievances by persons who otherwise did not cause or participate in the underlying conduct—the false disciplinary action— does not violate the Fourteenth Amendment.   *See Owens v. Hinsley*, 635 F.3d 950, 953 -54 (7th Cir. 2011) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)).   Out of an abundance of caution, the due process aspect of Count 3, therefore, will be dismissed *without* prejudice.

As explained in detail relative to Count 2, the allegation that Defendants Butler and Scott control the disciplinary process has been found to support an equal protection claim against those two defendants, but that allegation does not touch upon Grievance Officer Oakley.   Oakley is included in the broad claim that white inmates are afforded due process, in that they are not afforded investigations and fair hearings, but she did not participate in the disciplinary proceedings, and none of the allegations of racial animus pertain to the administrative grievance process.   There are no specific allegations of racial bias by Oakley, only a conclusory assertion (*see* Doc. 10, pp. 12-14, 18).   The "scent of obstruction" is not enough to state a claim.

The Court notes that insofar as it is alleged that Oakley was attempting to prevent Plaintiff from exhausting administrative remedies, as required by 42 U.S.C. § 1997e(a), only

*available* administrative remedies need be exhausted.  If Oakley blocked access to administrative remedies, Plaintiff would not be blocked from filing suit; therefore, the First Amendment is not implicated.

The entirety of Count 4, and Defendant Oakley, will be dismissed without prejudice.

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, Plaintiff's motions for "clarification," to "perfect delivery," for a copy of the docket sheet, and for substitution of the undersigned district judge (Docs. 11, 13-15, 21) are all **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a supplement to Exhibit 23 (Doc. 12) will be **GRANTED**.  The Clerk of Court will file the supplemental exhibit. The supplement will be considered to be a part of the amended complaint (Doc. 10).

**IT IS FURTHER ORDERED** that **COUNT 3** and Defendant **LORI OAKLEY** are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNTS 1 and 2** shall **PROCEED** against Defendants **KIM BUTLER and LT. SCOTT**.

The Clerk of Court shall prepare for Defendants **KIM BUTLER and LT. SCOTT**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to

effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), if all parties consent to such a referral.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding

that his application to proceed *in forma pauperis* has been granted.   *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 7 days after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 20, 2015**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**