IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PIERRE MONTANEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-754-MJR-SCW |
| | ) |
| KIMBERLY BUTLER and | ) |
| MINH SCOTT, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### INTRODUCTION

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Pierre Montanez, filed a complaint against Kimberly Butler and Minh Scott, individually and in conspiracy, for retaliating against him by filing a false disciplinary report and finding him guilty because he would not testify falsely for them and implicate his cellmate (Count 1) and for denying his due process and equal protection rights by refusing to conduct an investigation and administer a polygraph test before issuing a predetermined conviction in a disciplinary hearing (Count 2). This matter is before the Court on Defendants' motion for summary judgment (Docs. 146 and 147). Plaintiff has filed a response (Doc. 151) in opposition to the motion. Plaintiff has also filed his own motion for summary judgment (Doc. 130) to which Defendants have responded (Doc. 143). Based on the following, the Court **GRANTS IN PART and DENIES IN PART** Defendants' motion for summary judgment

and **DENIES** Plaintiff's motion for summary judgment.

## FACTUAL BACKGROUND

Plaintiff's allegations stem from a search of his cell by the tactical team at Menard Correctional Center during which a weapon was found. (Doc. 22, p. 4). Plaintiff alleges that Kimberly Butler, who was warden at the time, told him that he would be protected from punishment if he testified that the weapon belonged to his cellmate, Geoffrey Freeman. If Plaintiff did not, then Butler warned him that he would be found guilty of possessing the weapon. Plaintiff refused to testify against his cellmate, and they were both issued disciplinary reports for possessing dangerous contraband. *Id.* at 5. Plaintiff alleges that this was done out of retaliation for his failure to provide false testimony against his cellmate. *Id.* Plaintiff further alleges that during the review of his disciplinary report before the adjustment committee he was denied due process when Defendant Minh Scott, the adjustment committee chairperson, refused to conduct an investigation or a polygraph examination. *Id.* Plaintiff also alleges that he was denied the investigation and polygraph because he is African-American and that white inmates are routinely afforded these protections in their hearings. *Id.*

The search giving rise to this suit was conducted on April 14, 2014, by Correctional Officer Alwerdt. (Doc. 147-1, p. 6, 10). The disciplinary report indicates that Alwerdt shook down the cell shared by Plaintiff and Freeman. (Doc. 147-1, p. 10; 151-1, p. 3). Alwerdt noticed a pillow on Freeman's bunk with missing stitches and, inside the pillow, found a weapon in the pillow stuffing made out of a lid of a property

box. *Id*. According to Plaintiff's affidavit,[1] he then was confronted by Warden Butler who directed him to falsely accuse Freeman of possessing the weapon. (Doc. 151-1, p. 4). Plaintiff testified in his affidavit that Butler informed him that if he accused Freeman then he would not be mentioned in the disciplinary report. If, however, Plaintiff refused to cooperate, then Butler had already instructed Defendant Scott to find Plaintiff guilty of possessing dangerous contraband. *Id*. at p. 5. Both Plaintiff and Freeman were issued disciplinary reports for possessing the weapon on April 14, 2014. (Doc. 147-1, p. 10 and 12). Scott testified that it is the prison policy to issue both cellmates disciplinary tickets when neither inmate will admit to whom a weapon belongs. *Id.* at 6.

Plaintiff was brought before the adjustment committee, chaired by Scott on April 16, 2014. (Doc. 147-1, p. 6; 151-1, p. 5). Scott testified that the adjustment committee consisted of Scott and Jason Hart, but Plaintiff testified that Scott and Plaintiff were alone in the room and that Jason Hart was not present. (Doc. 147-1, p. 7; 151-1, p. 6). Plaintiff further testified that Scott informed him that Scott had been directed by Butler to find Plaintiff guilty and that Scott was refusing his request for an investigation and a polygraph test. *Id.* at 6, 11. The disciplinary report indicates that Plaintiff requested a polygraph examination and also that he called Inmate Freeman as a witness. (Doc. 147-1,

---

[1] The Court notes that while Plaintiff sat for a deposition, it appears from the deposition transcript that Plaintiff failed to participate in the deposition, instead merely referring back to his complaint in response to all questioning (Doc. 147-1, p. 1-4). Plaintiff argues in his response that the Court was not provided with a full copy of the transcript and that Defendants have omitted portions where defense counsel spoke to Plaintiff about his case. However, a review of the transcript reveals no missing pages. The transcript appears to be a complete copy of what was transcribed by the court reporter during the deposition. The Court notes that Defendants have not sought any relief from the Court for Plaintiff's participation, or lack thereof, at the deposition.

p. 10). According to Scott, Plaintiff was found guilty based on the disciplinary ticket, the reporting officer's shakedown findings, Plaintiff's witnesses' testimony, and the fact that neither Plaintiff nor his cellmate would admit owning the weapon. (Doc. 147-1, p. 7, 11). The adjustment committee report indicates that Plaintiff pleaded not guilty and testified that the pillow where the weapon was found belonged to his ex-cellmate, Inmate Watson. (Doc. 147-1, p. 11). The adjustment committee report is signed off on by both Scott and Jason Hart. *Id.* Scott testified that Butler did not instruct him to find Plaintiff guilty, that he did not find Plaintiff guilty alone, and that he could not find Plaintiff guilty without the entire committee's agreement. *Id.* at 7-8.

Plaintiff was found guilty of the charge of dangerous contraband and was sentenced to 1 year CGrade, 1 year in segregation, 1 year commissary restriction, and 3 months yard restriction. (Doc. 147-1, p. 11). Plaintiff's disciplinary report and sentence was ultimately expunged after Plaintiff filed a grievance because the Administrative Review Board had expunged Freeman's disciplinary report. (Doc. 147-1, p. 15). The ARB expunged Freeman's disciplinary report after Freeman insisted that neither he nor Plaintiff had any knowledge of the weapon inside the pillow. (Doc. 130-2, p. 8). The ARB also noted that the "weapon" found was noted as being made out of the plastic from the property box but that no further description of the "weapon" was provided, nor was there any indication why the item was thought to be a weapon. *Id.* The ARB found that the charge was not substantiated and ordered Freeman's charge expunged on August 1, 2014. *Id.* Plaintiff's grievance was ruled on September 4, 2014, signed off on

by Warden Butler on September 8, 2014, and his disciplinary ticket was expunged on September 10, 2014. (Doc. 147-1, p. 14-15).

## LEGAL STANDARDS

### A. Summary Judgment Standard

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(a));** *see also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005).** The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).** After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)).** A fact is material if it is outcome determinative under applicable law. *Anderson*, **477 U.S. at 248;** *Ballance v. City of Springfield, Ill. Police Dep't*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Vill. of Slinger*, **388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.**

On summary judgment, the Court considers the facts in the light most favorable

to the non-movant. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.; Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004), *abrogated on other grounds by Spiegla II*, 481 F.3d at 966 (7th Cir. 2007). *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).

Because Plaintiff also moves for summary judgment here, an additional word about the burden of proof merits note. The Supreme Court has reminded district courts that "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254. Thus, where, as here, the party moving for summary judgment also bears the burden of persuasion at trial (i.e., the movant is the plaintiff), he must establish all the essential elements of his claim or defense. *See Celotex*, 477 U.S. at 322; *see also Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (**if summary judgment movant is plaintiff, he must show that the record contains evidence satisfying his burden of persuasion**); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (**at summary judgment state, party that bears burden of persuasion at trial must come forward with sufficient evidence of each essential element of its prima facie case**); **MOORE'S FEDERAL PRACTICE § 56.13(1) (3d ed. 2000).** This is different from a

summary judgment motion filed by a defendant who does not bear the ultimate burden of persuasion at trial and who can prevail just by showing an absence of evidence to support any essential element of the nonmovant's case. *See Modrowski v. Pigatto*, **712 F.3d 1166, 1169 (7th Cir. 2013).** But if the summary judgment movant does bear the burden of proof at trial, he can prevail only by proving each element of his case with evidence sufficiently compelling that no reasonable jury could return a verdict for the nonmovant. *Celotex*, **477 U.S. at 331 ("If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence…that would entitle it to a directed verdict if not controverted at trial");** s*ee Anderson*, **477 U.S. at 248.**

B. Retaliation

An official who retaliates against a prisoner because the prisoner filed a grievance violates that prisoner's First Amendment rights. *DeWalt v. Carter*, **224 F.3d 607, 618 (7th Cir. 2000).** Establishing a § 1983 claim of First Amendment retaliation requires a prisoner to show the following: (1) that he engaged in a protected activity, (2) he suffered a deprivation likely to prevent future protected activities, and (3) there was a causal connection between the two. *Watkins v. Kasper*, **599 F.3d 791, 794 (7th Cir. 2010)(citing** *Bridges v. Gilbert*, **557 F.3d 541, 546 (7th Cir. 2009)).** A defendant can still prevail, however, if he shows that the offending action would have happened even if there had been no retaliatory motive, i.e. if "the harm would have occurred anyway." *Mays v. Springborn*, **719 F.3d 631, 634 (7th Cir. 2013)(citing** *Greene v. Doruff*, **660 F.3d 975, 977-80**

**(7th Cir. 2011))**. At summary judgment, "mere speculation" by the plaintiff is insufficient to carry his burden. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, **544 F.3d 752, 757 (7th Cir. 2008)**; *Devbrow v. Gallegos*, **735 F.3d 584, 588 (7th Cir. 2013)("Retaliation requires a showing that plaintiff's conduct was a motivating factor in defendants' conduct . . . speculation regarding . . . motive" is insufficient).**

C. **Due Process**

The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property. *See Marion v. Radtke*, **641 F.3d 874, 875 (7th Cir. 2011).** Procedural due process protections require that the inmate receive "advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decisionmaker, and a written explanation supported by at least 'some evidence' in the record, for any disciplinary action taken." *Langstrom v. Kingston*, **463 F.3d 621, 624 (7th Cir. 2006)(citations omitted).**

D. **Equal Protection**

The Supreme Court has held that equal protection rights extend to prisoners. *Cruz v. Beto*, **405 U.S. 319, 321 (1972)**. In order to establish a *prima facie* case of discrimination under the equal protection clause, a plaintiff must show "that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." *McNabola v. Chicago Transit Auth.*, **10 F.3d 501, 513 (7th Cir. 1993)(internal**

quotations omitted) (quoting *McMillian v. Svetanoff*, 878 F.2d 186, 189 (7th Cir. 1989)). As applied to prisoners, the equal protection clause "requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest." *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000) (citing *Hudson v. Palmer*, 468 U.S. 517, 523 (1984); *Lee v. Washington*, 390 U.S. 333 (1986)(per curiam); *Williams v. Lane*, 851 F.2d 867, 881 (7th Cir. 1988)).

   E. **Conspiracy**

To establish a conspiracy claim under § 1983, a plaintiff must show "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988).

   F. **Qualified Immunity**

Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). It applies only to state officials who occupy positions with discretionary or policymaking authority and who are acting in their official

capacities. *Harlow*, 457 U.S. at 816; *Denius*, 209 F.3d at 950.

The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232, see *Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). While it is often beneficial to first inquire into whether the plaintiff has shown a constitutional violation, the Court has discretion to address the second prong first in light of the circumstances of the case. *Pearson*, 555 U.S. at 236.

## ANALYSIS

### A. Retaliation and Conspiracy

Defendants first argue that they are entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff did not engage in protected First Amendment activity. Plaintiff's complaint alleges that Defendants retaliated against him because he refused to implicate his cellmate as the owner of the weapon found during the search of their cell. Defendants argue that Plaintiff would only be protected under the First Amendment if Plaintiff was called to testify against himself, not against his cellmate. *See Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977); *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). But the Court previously noted in reviewing Plaintiff's claim under 28 U.S.C. § 1915A that a government official cannot retaliate against someone for giving truthful testimony. *See generally Chrzanowski v. Bianchi*, 725 F.3d 734, 742-43 (7th Cir. 2014).

Here, Plaintiff alleges that he was retaliated against because he refused to testify falsely against Freeman, as Plaintiff testified that the weapon did not belong to Freeman but rather another, former cellmate. As such, taken in the light most favorable to the Plaintiff, his refusal to testify falsely is speech protected by the First Amendment.

Further, the Court finds that there are disputes of fact as to Plaintiff's retaliation claim which prevents this Court from awarding summary judgment to either side. While Defendants argue that they did not personally issue the disciplinary report against Plaintiff, Plaintiff has testified to the contrary. While the names of neither of the defendants appear on the actual disciplinary report, Plaintiff testified that Defendant Butler told him if he did not testify against Freeman, that she would have a disciplinary report issued against him, and that she would direct Scott to find him guilty of the report. Plaintiff further testified that Scott told him at the hearing that Butler directed Scott to find Plaintiff guilty of the charge because of his refusal. Plaintiff also testified that Scott denied him an investigation or a polygraph, as Scott had already predetermined Plaintiff's guilt. While Defendant Scott argues that the decision was issued jointly with Jason Hart, Plaintiff testified that Hart was not present at the hearing and that Scott made everyone except Plaintiff leave the room when he informed Plaintiff of the guilty finding. There is evidence in the record suggesting that Scott made the guilty decision on his own, if the jury were to believe Plaintiff's testimony at trial.

Defendants also indicate that Plaintiff would have received a disciplinary report and guilty finding regardless of the alleged retaliation because it is a Menard policy to

issue disciplinary tickets to both inmates if neither cellmate will admit to the ownership of a weapon. Only the testimony of Defendant Scott suggests this is Menard's policy. Defendants have not provided any written evidence of the policy, and Plaintiff testified that no such policy exists. Defendants' argument requires the Court to make a credibility finding as to whether Defendant Scott is being truthful as to the existence of such a policy, a finding that the Court cannot make at this stage.

Finally, Defendants argue that they are entitled to summary judgment because Plaintiff's ticket was later expunged. In support of this argument, they rely on ***Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009)**, in which the Seventh Circuit held that "[a] single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." ***Bridges*, 557 F.3d at 555.** In *Bridges*, the inmate was issued an unjustified disciplinary charge in retaliation for his actions, but the charge was dismissed. *Id*. at 555. There is no evidence in that case that Bridges actually suffered any type of deprivation that would be likely to deter someone from exercising First Amendment activity in the future as the charge was dismissed. *Id.*

In this case, however, Plaintiff was charged and found guilty based on an alleged false disciplinary report. Plaintiff served time in segregation before his disciplinary report was expunged several months later. During the time between the issuance of his sentence and the expungement, the record suggests that Plaintiff was subject to the disciplinary action ordered by Scott, including time in segregation and other restrictions on commissary and yard. Unlike in *Bridges*, Plaintiff actually suffered a deprivation

that would be likely to deter him from exercising his First Amendment rights in the future. As such, the Court finds that the holding in *Bridges* is distinguishable from this case, and Plaintiff's retaliation claim is sufficient to proceed.

Plaintiff also has presented evidence that Defendants conspired against him. He testified that both Butler and Scott told him that they had spoken to each other about Plaintiff's refusal to implicate his cellmate and that they would find him guilty of the charge for that reason. A jury could find that Plaintiff's testimony is evidence that the two Defendants agreed to find Plaintiff guilty of the infraction to retaliate for Plaintiff's speech. As such, the conspiracy portion of Plaintiff's claim may proceed.

Finally, while Defendants also argue that they are entitled to qualified immunity on Plaintiff's retaliation claim, the Court finds that, when taken in the light most favorable to Plaintiff, show that there are issues of fact as to whether Defendants' actions constituted a violation of Plaintiff's First Amendment rights. For all these reasons, the Court **DENIES** both Defendants' and Plaintiff's motions for summary judgment with respect to Plaintiff's retaliation and conspiracy claims in Count 1.

### B. Due Process

#### 1. *Procedural Due Process*

Defendants argue that Plaintiff's procedural due process claim must fail because Plaintiff fails to provide evidence indicating that he had a liberty interest. Due process protections are only required when a prisoner is being deprived of a constitutional liberty interest. Punishments such as a demotion in grade or commissary restriction do

not amount to a constitutional deprivation. *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997). Further, a term of disciplinary segregation may not rise to the level of a constitutional deprivation of a liberty interest, depending on the length of disciplinary confinement and the conditions of that confinement. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009).

In this case, Plaintiff did not lose good time credits, which would establish a liberty interest, and his loss of commissary and grade does not constitute a deprivation. As a sentence of disciplinary segregation was the only action that Plaintiff received that could amount to a constitutional deprivation, the Court must determine if the segregation conditions amounted to an "atypical and significant hardship…in relation to the ordinary course of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "The key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). In order to determine if a sentence of segregation amounts to an "atypical and significant hardship," the Seventh Circuit has instructed that the court must look at "the duration of the segregative confinement and the conditions endured by the prisoner during that period." *Marion*, 559 F.3d at 698.

The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Townsend v. Fuchs*, 522 F.3d 765, 766, 772 (7th Cir.

2008) (59 days); *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005); *Sandin*, 515 U.S. at 486 (thirty (30) days did not constitute an atypical or significant deprivation); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days). The Seventh Circuit has noted in these types of cases, where a prisoner is subject to only a short duration in segregation, the Court has routinely "affirmed dismissal without requiring a factual inquiry into the conditions of confinement." *Marion*, 559 F.3d at 698. However, a liberty interest "*may* arise from a long term of confinement combined with atypical and significant hardships." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743-44 (7th Cir. 2013) (citing *Marion*, 559 F.3d at 697-98; *Sandin*, 515 U.S. at 486). For instance, a term of six months is not an extreme term, standing alone, unless combined with conditions of confinement that "are unusually harsh." *Marion*, 559 F.3d at 698.

Here, Plaintiff served approximately five months in segregation. Plaintiff has failed to point to any case law suggesting that such a term warrants due process protections on its own, and it is shorter than terms which have required further consideration as to the conditions an inmate was subjected to during segregation. *Hardaway*, 734 F.3d at 743 (182 days); *Marion*, 559 F.3d at 699 (240 days). Plaintiff has not provided any evidence that the conditions he faced were atypical and significant. He has not testified to the condition of his cell while in segregation or any of the other conditions he faced due to being placed in disciplinary segregation. Plaintiff did testify in his affidavit that he was not allowed full access to his legal documents or telephone communications during his time in segregation which led to his losing a direct appeal

(Doc. 151-1, p. 9-11), but these are not the type of conditions which amount to "atypical and significant." *See Hardaway*, **734 F.3d at 744-45 (182 days in segregation with a confrontational cellmate and weekly access to showers and yard not enough to constitute atypical and significant).** Accordingly, the Court finds that Plaintiff's limited stay in segregation did not implicate a constitutionally protected liberty interest that would warrant due process protections and that Defendants, not Plaintiff, are entitled to summary judgment.

    *2. Substantive Due Process*

The Seventh Circuit has held that an inmate's substantive due process rights may be implicated when a prison official knowingly "mak[es] a false charge" against an inmate. *Lagerstrom v. Kingston*, **463 F.3d 621, 625 (7th Cir. 2006) (***citing Leslie v. Doyle***, 125 F.3d 1132, 1136-37 (7th Cir. 1997)).** "Issuing false and unjustified disciplinary charges can amount to a violation of substantive due process if the charges were in retaliation for the exercise of a constitutional right." *Black v. Lane*, **22 F.3d 1395, 1402-03 (7th Cir. 1994).** But in order for the actions of a prison official to interfere with a plaintiff's substantive due process rights, "the consequences [must be] sufficiently severe." *Lagerstrom*, **463 F.3d at 625.** In *Lagerstrom*, the Seventh Circuit noted that the plaintiff's confinement in segregation did not implicate a substantive due process right because the deprivation he suffered was not "atypical and significant." Here, the Court has already found that Plaintiff's five month stint in disciplinary segregation did not amount to an atypical and significant deprivation. As a result, Plaintiff's

substantive due process claim fails.

### C. Equal Protection

The Court also finds that Defendants are entitled to summary judgment on Plaintiff's equal protection claim. Plaintiff's complaint alleged that Defendants Butler and Scott found him guilty on the disciplinary report because he is African-American. In support of his claim, Plaintiff offers the affidavit of his cellmate Geoffrey Freeman.[2] Freeman testified that in his experience at Menard, having been housed there since 1986, that he believes that officials view African-Americans as an inferior species and they seek to pile the maximum amount of false accusations on African-American prisoners (Doc. 151-1, p. 17-18). Freeman testified that the adjustment committee is used for retaliatory purposes and that the chairperson always finds the inmate guilty, which happens in 90% of African American cases before the adjustment committee. *Id.* at 20. But the evidence provided by Plaintiff amounts to little more than speculation on his and Freeman's part.

Plaintiff fails to offer, and Freeman's affidavit does not seek to offer, any evidence that Defendants' actions against Plaintiff were done because he was African American. In fact, Freeman testified that Plaintiff was punished as part of planned retaliatory action against Freeman because Freeman was planning to file suit against them and would be eligible for a statute releasing elderly inmates early from prison, if he didn't have a record of any disciplinary conduct. *Id.* at p. 26-27. Plaintiff has not shown that he was

---

[2] While Defendants argue correctly that Freeman is not an expert witness, Plaintiff can offer Freeman's testimony as a lay witness.

treated differently than other inmates who were not African-American, other than Freeman's opinion that 90% of African-Americans are treated badly by the adjustment committee, testimony that he does not support with any facts. Both Freeman and Plaintiff are African-American and received the same sentence; Plaintiff fails to point to any similarly situated individual who was not African-American and was treated differently by the adjustment committee. As such, the Court finds that Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

## CONCLUSION

Issues of material fact exist as to Plaintiff's retaliation and conspiracy claims, and Plaintiff has not presented evidence at this stage that is sufficiently compelling that no reasonable jury could find for the defendants. For all of the above reasons, the Court **DENIES** Plaintiff's motion for summary judgment (Doc. 130) and **GRANTS IN PART and DENIES IN PART** Defendants' motion for summary judgment (Doc. 146). Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's due process and equal protection claims and is **DENIED** as to Plaintiff's retaliation and conspiracy claim. Only the retaliation and conspiracy claim in Count 1 remains in this case, and the case remains set for jury trial before the undersigned on May 1, 2017.

**IT IS SO ORDERED**.

DATED: April 21, 2017

*s/ Michael J. Reagan*
MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**